**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

MARIA ORTIZ,          )
                               )
        Plaintiff,     )
                               )
      v.              )       C.A. No. 2024-0692-CDW
                               )
JUSTO ORTIZ and    )
IVELISSE ORTIZ,     )
                               )
        Defendants.   )

**ORDER RESOLVING
DEFENDANTS' MOTION TO DISMISS**

**WHEREAS:**[1]

A.     Maria Ortiz filed for divorce from her husband, Justo Ortiz, in November 2019.[2] Maria and Justo[3] had been married for 47 years at the time.[4]

B.     Maria received a Default Final Decree of Divorce ("Divorce Decree") from a Texas court on January 12, 2024.[5]

---

[1] I take these facts from the complaint and documents integral thereto. *See Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 320 (Del. 2004) ("On a motion to dismiss, the Court may consider documents that are 'integral' to the complaint, but documents outside the pleadings may be considered only in 'particular instances and for carefully limited purposes.'").

[2] Pl.'s Verified Compl. ("Compl."), Docket Item ("D.I.") 1 ¶ 7.

[3] All three parties share the same last name, so the court uses first names in this order for clarity and intends no disrespect or familiarity.

[4] *Id.* ¶ 6.

[5] *Id.* ¶ 8. The Divorce Decree is Exhibit A to the Complaint.

C.     Under the Divorce Decree, Maria is entitled to "75% [of the] individual retirement accounts, simplified employee pensions, annuities, and variable annuity life insurance benefits in [Justo]'s name, including but not limited to the Raytheon Excess Pension Plan...."[6] This entitlement extends to "any real property that was purchased with these funds or can be traced back to these funds, whether in Texas, Delaware, or wherever Justo Ortiz, or the property may be found."[7]

D.     Around two months before Maria filed for divorce, non-party Pocket Aces, Inc. executed a deed transferring property at 26 Holden Drive, New Castle, DE 19720 ("Property"), to Justo and his daughter, Ivelisse,[8] for 10 dollars.[9] Under this deed, Defendants held title to the Property as joint tenants with right of survivorship.[10]

E.     On September 8, 2020—after the divorce was filed but before it was finalized—Defendants executed a deed transferring title to the Property to Ivelisse alone in fee simple.[11]

---

[6] Compl. Ex. A ¶ P-8.

[7] *Id.*

[8] The Complaint does not state whether Ivelisse is related by blood to Maria.

[9] *See* Compl. Ex. B ("2019 Purchase").

[10] *Id.*

[11] *See* Compl. Ex. C ("2020 Transfer").

F.      According to Maria, "[t]he sole and only purpose for Justo Ortiz to add Ivelisse Ortiz to the original deed and subsequently transferring title into her name was to avoid the rights granted to Maria Ortiz by the Divorce Order."[12]

G.      The Complaint, filed on June 27, 2024, asserts two counts. Count I asserts a claim for fraudulent transfer and Count II asserts a claim for aiding and abetting that fraudulent transfer.[13]

H.      On July 30, 2024, Defendants moved to dismiss the Complaint.[14] On November 7, this action was reassigned to me.[15]  I scheduled the Motion for oral argument, but after reviewing the parties' papers I concluded no argument was necessary.[16]

---

[12] Compl. ¶ 20.

[13] Compl. ¶¶ 14–21 (Count I); 22–27 (Count II).  The Complaint does not specify whether Maria is asserting both counts against both Defendants or only one count as to each (such as fraudulent transfer against Justo and aiding and abetting against Ivelisse).  Under Delaware law, fraudulent transfer claims provide for relief against both transferor and transferee, *see* 6 *Del. C.* §§ 1307–1308, so I interpret the Complaint as asserting Count I against both Defendants.  I do not need to decide the issue for Count II because, as explained below, there is no cause of action for aiding and abetting a fraudulent transfer claim.

[14] Defs.' Mot. to Dismiss the Compl. in Lieu of an Ans., D.I. 6 ("Motion").

[15] D.I. 9.

[16] Because I cancelled oral argument, the "Date Submitted" for the Motion is the date that I reviewed the papers and decided to cancel arguments, February 19, 2025.

**IT IS ORDERED**, this 21st day of March, 2025, that:

1.  Defendants seek to have both counts of the Complaint dismissed under Court of Chancery Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[17]  I find that Maria has stated a claim under Count I (fraudulent transfer), but not as to Count II (aiding and abetting the fraudulent transfer).  Accordingly, I recommend that Defendants' Motion be DENIED as to Count I and GRANTED as to Count II.  My reasoning follows.

2.  For more than 75 years, Delaware has been a notice pleading jurisdiction for civil litigation.[18]  Under notice pleading, as the Delaware Supreme Court has explained, the purpose of a complaint is to "put a defendant on fair notice in a general way of the cause of action asserted, which shifts to the defendant the burden to determine the details of the cause of action by way of discovery for the purpose of raising legal defenses."[19]

3.  Thus, under Court of Chancery Rule 8, the "centerpiece of the operative approach to notice pleading,"[20] a plaintiff does not need to plead a particular cause of action, so long as the complaint contains "a short and plain

---

[17] Motion ¶¶ 1, 5, 6.

[18] Delaware abandoned common law pleading in favor of the current rules-based system in 1948.  *See Garfield v. Allen*, 277 A.3d 296, 307 (Del. Ch. 2022).

[19] *Klein v. Sunbeam Corp.*, 94 A.2d 385, 391 (Del. 1952).

[20] *Garfield*, 277 A.2d at 360.

statement of the claim showing that the pleader is entitled to relief" and "a demand for judgment for the relief to which the party deems itself entitled." Ct. Ch. R. 8(a).

4.     Rule 8's notice pleading approach subjects complaints to a familiar and restrained analysis when facing a motion to dismiss under Rule 12(b)(6): the court will "(1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as 'well-pleaded' if they give the opposing party notice of the claim, [and] (3) draw all reasonable inferences in favor of the non-moving party...." *Turnbull v. Klein*, 2025 WL 353877, at *8 (Del. Ch. Jan. 31, 2025) (quoting *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011)).  In short, "[t]he governing pleading standard in Delaware to survive a motion to dismiss is reasonable 'conceivability.'" *Premier Healthcare, Inc. v. Waters*, 2024 WL 4403295, at *2 (Del. Ch. Oct. 4, 2024) (quoting *Cent. Mortg. Co.*, 27 A.3d at 535)).

5.     But this is not true for all claims.  Sometimes a plaintiff must plead the elements of their claim with more specificity than Rule 8 requires. Claims alleging fraud or mistake are two types of such claims, and Court of Chancery Rule 9 requires that a party "state with particularity the circumstances constituting fraud or mistake."  Ct. Ch. R. 9(b).

6.     Claims for actual fraudulent transfer, such as Count I here,[21] are subject to Rule 9(b)'s heightened pleading standard. *Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*, 2023 WL 5688392, at *10 (Del. Ch. Sept. 5, 2023) (actual fraudulent transfer claim requires plaintiff to "meet the particularity standard of Rule 9(b) by pleading specific supporting facts describing the circumstances of the transfer, such as the who, what, and when of the challenged transfer") (cleaned up); *Premier Healthcare*, 2024 WL 4403295, at *3 ("Intent may be averred generally, but the complaint nevertheless must plead facts showing intent to defraud with specific supporting facts describing the circumstances of the transfer.") (cleaned up).[22]

---

[21] The Complaint repeatedly asserts Justo acted with the intent to hinder, delay, and defraud Maria from recovering her share of the marital estate. *See* Compl. ¶¶ 7 ("Mr. Ortiz moved from Texas to Delaware to avoid division of his property with Maria Ortiz."); 12 ("This was done to further avoid Maria getting any value from the property."); 13 ("to extract value and try to avoid the Divorce Order"); 16 ("to avoid responsibility to Maria Ortiz"); 19 ("only to avoid the rights granted to Maria Ortiz"); 20 ("The sole and only purpose ... was to avoid the rights granted to Maria Ortiz by the Divorce Order."); 23 ("to avoid the Divorce Order and deprive Maria Ortiz of the values in the Divorce Order"); 25 (same); 26 ("knowing Maria Ortiz was entitled to 75% of these funds"). This is a claim for actual fraudulent transfer, not constructive fraudulent transfer. *Compare* 6 *Del. C.* § 1304(a)(1) (actual fraudulent transfer), *with* 6 *Del. C.* § 1304(a)(2) (constructive fraudulent transfer).

[22] Defendants did not cite Rule 9(b) in the Motion, but I do not think that prevents me from applying Rule 9(b) here for at least three reasons. First, Defendants cited neither Rule 8 nor Rule 9(b) in their Motion, so it is not as if Defendants clearly eschewed Rule 9(b) as the basis for their attack on the fraudulent transfer claim. Second, the Motion's general theme is that Maria needed to plead more detail in the Complaint than she did, *see* Motion ¶ 4, which is what Rule 9(b) requires from plaintiffs when it applies. Third, Rule 9(b) subjects fraud claims to a heightened pleading requirement to protect both defendants and an already-busy legal system

7. **Count I—Fraudulent Transfer.** I start with Count I of the Complaint, Maria's claim against Defendants for fraudulent transfer. Defendants offer three arguments for why, in their view, the fraudulent transfer claim fails to state a claim upon which relief can be granted.

8. First, Defendants argue that even if every assertion in the Complaint is taken as true, the fraudulent transfer claim still fails because Maria's chronology is impossible, so Rule 12(b)(6) demands that Maria plead specific facts in the Complaint that explain this purported temporal impossibility.[23] Second, Defendants argue the fraudulent transfer claim also fails because Maria must specify whether the claim is brought under the Uniform Fraudulent Transfer Act or under some other source of authority, and, if the former, the specific section of the Uniform Fraudulent Transfer Act that has been violated.[24] Third, Defendants argue that "the Complaint fail[s]

_____

by preventing court processes from being used for fishing expeditions, so consideration of Rule 9(b) ought not depend, in my view, on whether a defendant explicitly invokes it. *Cf. Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1208 (Del. 1993) (quoting *U.S. ex rel. Joseph Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981)) ("To require that fraud be pleaded with particularity 'serves to discourage the initiation of suits brought solely for their nuisance value, and safeguards potential defendants from frivolous accusations of moral turpitude.'").

[23] Motion ¶ 4 ("Plaintiff's Complaint, without offering more, is stuck with the rigidity of its own chronology."); Reply ¶ 1 ("Plaintiff's chronology is inverted.").

[24] Motion ¶ 5 ("Moreover, it is not clear from the four corners of the Complaint what particular cause of action Plaintiff brings when she alleges a 'fraudulent transfer.'");

to sufficiently establish why this Court, on these facts, should hear the subject matter at this time, or whether remedies have been exhausted in other courts or other jurisdictions."[25]

9. Maria's opposition is simple enough: Delaware is a notice pleading jurisdiction and the Complaint gives Defendants sufficient notice of the claim asserted.[26]

10. Having considered the parties' arguments, I find that Count I states a claim because Maria has pleaded Count I with sufficient particularity to satisfy Rule 9(b). The Complaint pleads that (1) Maria is a creditor of Justo; (2) shortly before Maria filed for divorce, Justo purchased the Property using marital funds but put title jointly in his name and Ivelisse's, not his and Maria's; (3) after Maria filed for divorce, Justo transferred title to the Property to Ivelisse as sole owner; (4) after that transfer, Ivelisse obtained a $50,000 home equity line of credit secured against the Property; and (5) even though

---

Reply ¶ 2 ("The Complaint further fails to notice the particular cause of action Plaintiff brings when she alleges a 'fraudulent transfer.'").

[25] Motion ¶ 5.

[26] Pl.'s Response in Opp. to Defs.' Mot. to Dismiss (D.I. 7) ("Opp.") ¶¶ 9–10. Maria also chastises Defendants for referencing the Uniform Fraudulent Transfer Act but "fail[ing] to indicate its relevance." *Id.* ¶ 11 n.1. The relevance is obvious: the Property is in Delaware and Defendants both live here, so of course Defendants (and the court) are going to think Delaware's codification of a uniform law governing fraudulent transfers is implicated when Maria comes into court claiming Defendants engaged in a fraudulent transfer.

Justo no longer has an ownership interest in the Property, payments on the home equity line are made from distributions Justo receives from his Raytheon Excess Pension Plan, in which Maria claims a court-awarded interest.[27] And to support these claims, Maria attached to the Complaint the Divorce Decree and the deeds reflecting both the 2019 Purchase and the 2020 Transfer.[28] Maria has provided the "who, what, and when" necessary to meet her burden under Rule 9(b) and enable Defendants to mount a defense.

11. This conclusion is supported by considering the Complaint's allegations under the factors that help guide a finding of actual fraudulent transfer under the Uniform Fraudulent Transfer Act: the 2020 Transfer was to Ivelisse, an insider; Justo retains some amount of possession of the Property after the 2020 Transfer; the 2020 Transfer was made after Justo had been sued or threatened with suit; Justo absconded from Texas; and Justo purportedly received little or no consideration for the 2020 Transfer. *See* 6 *Del. C.* § 1304(b)(1), (2), (4), (6), (8).[29]

---

[27] Compl. ¶¶ 14–21.

[28] *See* Compl. Exs. A–C.

[29] *See also Wilm. Sav. Fund Soc'y, FSB v. Kaczmarczyk*, 2007 WL 704937, at *5 (Del. Ch. Mar. 1, 2007) ("In situations where the transfer occurs between family members, a rebuttable presumption of fraud arises, since collusion in this type of case is difficult to prove.").

12.    Defendants' arguments do not change this conclusion.  As to their first argument, Maria's chronology is not impossible.  The relevant date for Maria's fraudulent transfer claim is not when the Texas court issued the Divorce Decree, it is the date when Justo knew his marriage was in its death throes.  If that date precedes the dates on which the 2019 Purchase and 2020 Transfer occurred—if Justo bought the Property and transferred it to Ivelisse knowing what was coming down the pike and intending to frustrate it when the day arrived—then Maria's chronology works just fine.[30]  Defendants' second argument fails because Delaware law does not require Maria to identify the precise type of fraudulent transfer claim she intends to pursue,[31] and even if it did the Complaint, as I have already noted,[32] clearly establishes that Maria is pursuing a claim for actual fraudulent transfer.  And Defendants' third argument—if Defendants mean it to be an independent argument that the court lacks subject matter jurisdiction—fails because the Superior Court

---

[30] The Uniform Fraudulent Transfer Act make this clear, as it defines a "claim" as a right to payment even if that right is contingent, unmatured, disputed, and not yet reduced to a judgment.  6 *Del. C.* § 1301(3).

[31] *Premier Healthcare*, 2024 WL 4403295, at *2.

[32] *See* n.21, *supra*.

cannot void a deed and therefore does not have jurisdiction to grant the full relief sought by the Complaint.[33]

13. **Count II—Aiding and Abetting.** I turn now to Count II, Maria's claim for aiding and abetting. Defendants offer two arguments for why, in their view, the aiding and abetting claim fails. First, they say that the aiding and abetting claim fails because it is dependent on the fraudulent transfer claim and cannot survive without it.[34] Second, they say that the Complaint fails to plead sufficient facts showing that Ivelisse had "personal knowledge" of Justo's intent to evade the Divorce Decree.[35] Maria's rebuttal, once again, is that Delaware is a notice pleading jurisdiction and she has done enough to survive dismissal.[36]

---

[33] *See Cornell Glasgow, LLC v. LaGrange Props., LLC*, 2012 WL 3157124, at *5 (Del. Super. Aug. 1, 2012) (finding that "ejectment would be viable only if the Court unwinds the alleged fraudulent conveyance and voids [the defendant]'s deed to the property[,]" which "would require equitable intervention."); *cf. Bryant v. Way*, 2012 WL 1415529, at *11 (Del. Super. Apr. 17, 2012) (citations omitted) ("[T]his Court lacks jurisdiction to order equitable rescission, which in addition to the legal remedies, typically requires that the court cause an instrument ... to be set aside and annulled."). Also, if Maria proves her claim at trial but voiding the 2020 Transfer is impossible or impracticable, other remedies that only this court can grant might be necessary to put Maria in the position she would have been in but for the fraudulent transfer. *See Lake Treasure Hldgs., Ltd. v. Foundry Hill GP LLC*, 2014 WL 5192179, at *15 (Del. Ch. Oct. 10, 2014) (imposing constructive trust over fraudulently transferred intellectual property).

[34] Motion ¶ 6; Reply ¶ 4.

[35] *Id.*

[36] Opp. ¶¶ 9–10.

14. Ultimately, I need not consider these arguments because Count II must be dismissed for a different reason: it contradicts the court's fraudulent transfer jurisprudence, which does not recognize a claim for aiding and abetting a fraudulent transfer. "Despite the breadth of remedies available under state and federal fraudulent conveyance statutes, those laws have not been interpreted as creating a cause of action for 'aiding and abetting.'" *Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 203 (Del. Ch. 2006) (citations omitted); *see also Edgewater Growth Cap. P'rs., L.P. v. H.I.G. Cap., Inc.*, 2010 WL 720150, at *2 (Del. Ch. Mar. 3, 2010) ("[T]he Delaware [Uniform] Fraudulent Transfer Act does not create a cause of action for aiding and abetting, or conspiring to commit, a fraudulent transfer.").

15. Count II requests relief for allegedly aiding and abetting a fraudulent transfer. Such a claim does not exist, so I recommend that Count II be dismissed.

16. This is my report under Court of Chancery Rule 144. Exceptions are stayed under Rule 144(c)(2)(A) pending issuance of my final report.

/s/ *Christian Douglas Wright*
Magistrate in Chancery